UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| VALARI M., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|            v. | )   2:18-cv-00342-JDL |
| | ) |
| SOCIAL SECURITY ADMINISTRATION | ) |
| COMMISSIONER, | ) |
| | ) |
|    Defendant. | ) |

## ORDER

Valari M. challenges the final administrative decision of the Social Security Administration Commissioner—the September 25, 2017, decision of the administrative law judge ("ALJ")—which determined that she is not disabled and denied her application for disability insurance benefits and supplemental security income. Valari M. seeks remand on the basis that the ALJ's determination of her residual functional capacity ("RFC") is flawed and undermines the ALJ's conclusion that Valari M. is capable of performing work that exists in significant numbers in the national economy. For the reasons that follow, I conclude that remand is warranted.

### I. FACTUAL BACKGROUND

The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. § 404.1520 (West 2019). The claimant carries the burden of production on the first four steps, and the burden shifts to the Commissioner at Step 5. *Purdy v. Berryhill*, 887 F.3d 7, 9-10 (1st Cir. 2018). The five steps proceed as follows:

> 1) if the applicant is engaged in substantial gainful work activity, the application is denied; 2) if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted[.]

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001). If the impairment does not meet a listed impairment, the ALJ must, as an interim step, determine the claimant's RFC, § 404.1520(e), which is the most a claimant can still do despite their limitations. § 16.945(a)(1). The RFC is used to assess the two final steps:

> 4) if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey*, 276 F.3d at 5.

The first three steps are not at issue here. At Step 1, the ALJ determined that Valari M. has not engaged in substantial gainful activity since the alleged onset date of her disability. The ALJ next determined, at Step 2, that Valari M. has the severe impairments of inflammatory osteoarthritis, affective disorder, and anxiety disorder. She concluded that Valari M.'s other impairments—opioid dependence, hyperlipidemia, gastroesophageal reflux disease, history of ankle surgery, palpitations, and spine disorder—are not severe. At Step 3, the ALJ determined that Valari M.'s impairments do not meet and are not the medical equivalent of a listed impairment, either alone or in combination. In assessing the severity of Valari M.'s mental impairments, the ALJ concluded that Valari M. has moderate limitations in

both understanding, remembering, or applying information; and in concentrating, persisting, or maintaining pace.

Because the ALJ concluded that Valari M.'s impairments do not meet or medically equal a listed impairment, the ALJ proceeded to assess Valari M.'s RFC. The ALJ concluded that Valari M. has the RFC to perform light work, except that she imposed additional physical restrictions and crafted the following mental RFC: "The claimant is able to perform simple routine tasks and make simple work-related decisions." ECF No. 10-2 at 23. In reaching her RFC finding, the ALJ discussed the relevant evidence and the weight that she accorded it, beginning with Valari M.'s own testimony. The ALJ found that Valari M.'s "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record," and only accorded those statements weight to the extent they were consistent with other evidence. ECF No. 10-2 at 25.

With respect to the medical opinion evidence in the record, the ALJ gave the greatest weight to the testimony of medical expert Alan Duby, M.D., who testified at Valari M.'s administrative hearing that her widespread body pain is caused by her inflammatory arthritis. The ALJ accorded little weight to the opinion of Dr. Nicholas Rehagen, Ph.D., an examining psychologist whose opinion the ALJ summarized, in relevant part, as follows:

> Dr. Rehagen . . . opined . . . that the claimant does not appear to have the ability to perform work-related activities on a sustained basis primary [sic] due to severe chronic pain and accompanying depression and anxiety; that she has impaired ability to maintain pace, concentration, and focus primarily due to chronic back and leg pain; that

3

> her chronic pain impacts her ability to deal with stressors . . . and that
> she may have difficulty with reliability due to chronic pain.

*Id.* at 28. The ALJ also accorded little weight to the opinion of Richard DeCarolis, D.O., Valari M.'s primary care physician. Dr. DeCarolis opined that Valari M.'s chronic back pain prevents her from maintaining gainful employment and that she is unable to engage in physically demanding labor. Finally, the ALJ accorded little weight to the State agency medical consultants' physical and mental assessments because Valari M.'s impairments had worsened after those assessments were made.

The ALJ relied on the testimony of a vocational expert in her analysis of the final two steps. At Step 4, the ALJ found that Valari M. is unable to perform any past relevant work. At Step 5, the ALJ found that Valari M. is capable of making a successful adjustment to other work that exists in significant numbers in the national economy based on the vocational expert's testimony that a person with Valari M.'s RFC can perform the light and sedentary occupations of parking lot cashier, call out operator, and printed circuit assembly inspection touch up screener. Accordingly, the ALJ found that Valari M. is not disabled within the meaning of the Social Security Act and denied her application for disability insurance benefits and supplemental security income.

## II. LEGAL ANALYSIS

### A. The Parties' Arguments

Valari M. contends that the ALJ committed reversible error when determining her mental RFC by improperly rejecting Dr. Rehagen's opinion, relying on her own lay interpretation of raw medical evidence to determine Valari M.'s mental RFC, and

failing to account for the moderate limitations that she identified at Step 3 in the mental RFC. *See* ECF No. 12 at 5, 9-10. Valari M. asserts that these errors "irreparably taint" the ALJ's subsequent Step 5 determination that Valari M. is capable of performing work that exists in significant numbers in the national economy. *Id.* at 11. The Commissioner responds that the ALJ properly rejected Dr. Rehagen's opinion because he opined on issues outside of his area of expertise. The Commissioner further asserts that the ALJ committed no harmful error by "self-crafting" the mental RFC because that RFC is more favorable than the remaining evidence suggests. *See* ECF No. 14 at 9, 12.

**B.  Standard of Review**

The administrative decision must be affirmed if it is based on the correct legal standards and supported by substantial evidence, *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam), "even if the record arguably could justify a different" outcome. *Rodriguez Pagan v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Purdy*, 887 F.3d at 13. "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (internal citation omitted).

**C. Analysis**

**1. Rejection of Dr. Rehagen's Opinion**

Valari M. argues that the ALJ improperly rejected Dr. Rehagen's opinion that she "does not appear to have the ability to perform work-related activities on a sustained basis . . . primary [sic] because of [her] severe chronic pain and accompanying depression and anxiety." ECF 10-10 at 53. In reaching this conclusion, Dr. Rehagen stated that Valari M.'s "chronic pain does impact her ability to deal with stressors," that her "persistence and pace are problematic because of the chronic pain," and that "she may have problems with reliability as a function of absenteeism because of the chronic pain." *Id.* at 52.

The ALJ gave little weight to Dr. Rehagen's opinion to the extent that it was based upon Valari M.'s reports of chronic pain, reasoning that chronic pain is a physical impairment that Dr. Rehagen, a psychologist, was "not medically qualified to assess." ECF No. 10-2 at 28. In her Statement of Errors, Valari M. contends that Dr. Rehagen did not opine on her physical impairment, but rather "reported the psychological effects of chronic pain on [her] abilities . . . , an opinion that fell within his area of expertise" as a psychologist. ECF No. 12 at 9-10. Valari M. further asserted at oral argument that Dr. Rehagen viewed her depression and anxiety as inextricably intertwined with her chronic pain, which makes his statements about her chronic pain necessary to his conclusions about her mental limitations. To support these assertions, Valari M. points to Dr. Rehagen's conclusion that her ability to perform sustained work activities was limited because of "severe chronic pain and accompanying depression and anxiety." ECF No. 10-10 at 53. But aside from this

6

single conclusory statement, Dr. Rehagen did not draw a causal connection between Valari M.'s chronic pain and her depression and anxiety or otherwise discuss the relationship between her physical and mental limitations. Therefore, the ALJ reasonably concluded that Dr. Rehagen strayed outside his area of expertise when he opined on the limiting effects of Valari M.'s chronic pain.

The ALJ also identified additional reasons to reject Dr. Rehagen's opinion, including that his opinion was inconsistent with his normal mental status examination findings. Those findings indicate that Valari M.'s thought processes and content were normal, that she had no trouble following the course of the interview, that "[s]he was able to attend without difficulty or distractibility" to the interview, and that "her affect was appropriate and of general normal quality, considering the pain that she was reporting." ECF No. 10-10 at 51. And though Dr. Rehagen opined that Valari M.'s chronic pain impacts her ability to deal with stressors, may impact her persistence and pace, and could lead to problems with absenteeism, he also found that she does not have difficulties with most work-related activities. *Id.* at 52. Despite these relatively normal findings, Dr. Rehagen concluded that Valari M. cannot perform work-related activities on a sustained basis. *Id.* at 53. Thus, the record supports the ALJ's determination that Dr. Rehagen's opinion is inconsistent with his own normal mental status examination findings, which is "a good, and in itself sufficient, reason to reject" the opinion. *Fothergill v. Colvin*, No. 2:15-cv-143-JHR, 2016 WL 183643, at *3 (D. Me. Jan. 13, 2016).

Therefore, the ALJ did not commit reversible error by according Dr. Rehagen's opinion little weight in her analysis.

## 2. Lay Interpretation of Raw Medical Evidence

Valari M. also asserts that the ALJ improperly relied on her own lay interpretation of the medical evidence to reach her mental RFC finding. The Commissioner responds that the ALJ permissibly relied on Valari M.'s normal mental status examinations, which the ALJ is permitted to evaluate, and even if that was error, the error is harmless because the mental RFC is more favorable than the record supports.

Where, as here, a claimant has been diagnosed with severe mental impairments that do not equal a listed impairment,[1] assessment of the claimant's mental RFC is required. *Staples v. Astrue*, No. 09-440-P-S, 2010 WL 2680527, at *2 (D. Me. June 29, 2010), *aff'd*, 2010 WL 2854439 (D. Me. July 19, 2010). Because "bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record." *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990). An ALJ may, however, render "common-sense judgments about functional capacity based on medical findings," provided that she does not "overstep the bounds of a lay person's competence and render a medical judgment." *Id.*

Here, the mental RFC determined that "[t]he claimant is able to perform simple routine tasks and make simple work-related decisions." ECF No. 10-2 at 23. Of the three medical opinions that the ALJ discussed in her decision, only Dr. Rehagen's includes an assessment of Valari M.'s mental limitations and, as discussed

---

[1] As recounted above, the ALJ determined that Valari M.'s affective disorder and anxiety disorder are severe impairments but that they do not meet or equal a listed impairment.

above, the ALJ permissibly rejected Dr. Rehagen's opinion. After discounting his opinion, therefore, the ALJ relied on the raw medical evidence to craft a mental RFC. She noted that Valari M. has been diagnosed with a mood disorder and major depressive disorder, but emphasized that Valari M.'s mental status examination findings have typically been normal, she has never required psychiatric hospitalization, she has not received psychotherapy on an ongoing basis, and she has responded well to medications. The ALJ did not, however, explain how the medical data she described translated to the limitations she imposed in the mental RFC. *See Staples*, 2010 WL 2680527, at *3-4 (holding that an ALJ's mental RFC finding was error where the ALJ did not "clarif[y] how she derived the specific components of her RFC" from record sources).

The Commissioner argues that the ALJ's error in crafting the mental RFC is harmless because the RFC that the ALJ crafted is more favorable than the evidence in the record would support. *See Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458, at *2 (D. Me. Jan. 5, 2015). The remaining evidence in the record pertaining to Valari M.'s mental impairments, however, is limited to her mental status examination findings. Because the ALJ failed to connect those findings with the limitations she imposed, it is not possible to determine whether the mental RFC is more or less favorable than the evidence supports. In the absence of either a supporting medical opinion or a more detailed explanation, I conclude that the mental RFC that the ALJ crafted is unsupported by substantial evidence and that remand is warranted for that reason.

### 3. Failure to Account for Moderate Limitations in Mental RFC

Finally, Valari M. argues that the ALJ erred by failing to adequately account for the moderate limitations in concentrating, persisting, or maintaining pace that the ALJ identified at Step 3 when assessing Valari M.'s mental RFC. "This court has indicated that mental RFC findings typically should reflect, and be consistent with, the degree of impairment found" at Step 3, when the ALJ assesses whether the claimant's impairments meet or equal a listed impairment. *McHugh v. Astrue*, No. 09-104-B-W, 2009 WL 5218059, at *4 (D. Me. Dec. 30, 2009), *R. & R. adopted*, 2010 WL 324433 (D. Me. Jan. 20, 2010).

Here, the mental RFC as assessed by the ALJ imposes a limitation restricting Valari M. to performing "simple routine tasks" and making "simple work-related decisions." ECF No. 10-2 at 23. But certain "RFC limitations—restrictions to unskilled work and to only occasional judgment, decision-making, and changes in the work setting—do not reflect moderate restrictions in the broad category of concentration, persistence, or pace." *McHugh*, 2009 WL 5218059, at *4. I therefore conclude that the ALJ erred by failing to account for Valari M.'s moderate limitations in concentrating, persisting, and maintaining pace in her analysis of Valari M.'s mental RFC. That error, in turn, undermines the ALJ's Step 5 determination that Valari M. is capable of performing work that exists in significant numbers in the national economy. At Step 5, the ALJ "relied on the testimony of a vocational expert present at the plaintiff's hearing that a person with the posited mental RFC could perform the requirements of representative occupations . . . ." *Id*. Here, as in *McHugh*, the ALJ's "failure to convey to the vocational expert the moderate

limitations [s]he found in concentration, persistence, or pace undermines h[er] reliance on that expert's testimony to carry the commissioner's Step 5 burden." *Id.* I conclude that this error also requires remand.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that the Commissioner's administrative decision is **VACATED,** and the case is **REMANDED** for further proceedings consistent with this decision.

**SO ORDERED.**

**Dated this 10th day of September, 2019.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**
